**Milton M. LEVIN, Petitioner,**

v.

**Nicholas deB. KATZENBACH, Respondent.**

No. 95-65.

United States District Court
District of Columbia.

June 11, 1965.

Thurman Arnold, Washington, D. C., for petitioner.

David C. Acheson, U. S. Atty., Oscar Altshuler, Asst. U. S. Atty., Washington, D. C., for respondent.

lien, see 9 Mertens, Law of Federal Income Taxation § 54.44.

MATTHEWS, District Judge.

This matter having come on for hearing before the court, and upon consideration of the record herein, of the evidence adduced at the hearing, and of the records and proceedings in Criminal Case No. 913–62 (and argument of counsel having been waived), the court makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. On November 1, 1962 petitioner, Milton M. Levin was indicted for grand larceny by trick of $35,000 (22 D.C.Code 2201). He was subsequently found guilty as indicted by a jury on May 10, 1963 and on May 21, 1963, following denial of his motion for a new trial, he was sentenced to serve a term of six months to two years.

2. The Court of Appeals affirmed the conviction on June 30, 1964. Levin v. United States, 119 U.S.App.D.C. 156, 338 F.2d 265; petition for rehearing en banc was denied on September 22, 1964; and the Supreme Court on February 1, 1965 denied certiorari, 379 U.S. 999, 85 S.Ct. 719, 13 L.Ed.2d 701. There is now pending in the Court of Appeals a motion by petitioner for stay of mandate pending disposition of the present action.

3. The petitioner is not in custody but on bond. On February 25, 1965 he filed through retained counsel the present petition seeking to have his conviction vacated. He claims it was obtained upon untrue testimony. The petition makes application for a Writ of Habeas Corpus pursuant to 28 U.S.Code 1651(a), 2255, or in the alternative for an order vacating the conviction and granting a new trial under Rule 33 of the Federal Rules of Criminal Procedure. An amendment to the petition was filed on March 8, 1965. Consideration will first be given to the petition as filed February 25, 1965, and later the amendment will be taken up.

4. In the petition in a paragraph headed "Introductory Statement" on page 3 it is stated:

The ground for this petition is an admission made by the Government in its opposition to certiorari. That admission is to the effect that at least half of the testimony relied upon by the Government to obtain the conviction is untrue.

5. The alleged admission appears as footnote 3 in the brief for the United States in the Supreme Court in opposition to Levin's petition for certiorari. It reads:

Landriscina testified, apparently incorrectly, that he made the first payment of $10,000 on February 12.

6. The statement of the Government in footnote 3 in its brief in opposition in the Supreme Court is not newly discovered evidence. At the trial, the Government introduced testimony by Landriscina that he gave $10,000 in small bills to Levin on the morning of February 12, 1959, and the balance ($25,000) of the agreed $35,000 at about 5 p. m. on Friday, February 13, 1959. But as pointed out in footnote 4 in the opinion of the United States Court of Appeals in this case, 338 F.2d 265 at page 269:

Other witnesses for the Government through whom Landriscina got the $10,000 in small bills gave testimony indicating that Landriscina did not receive the $10,000 until the morning of Friday, February 13, 1959. The jury thus could infer, if it credited this testimony and that of Landriscina that he paid the $10,000 to the appellant [Levin], that Landriscina was mistaken as to the date and that the transfer took place on February 13 instead of February 12.

7. The theory of counsel for Levin is that it would have been impossible for Landriscina and Levin to have met on February 13, 1959 as Levin could not have known where to meet Landriscina on that date. Endeavoring to sustain his theory, counsel refers to Landriscina's testimony that the place of his meeting with Levin for February 13 was fixed at their meeting on February 12, and then counsel states, apparently inaccurately, that the Government by footnote 3 to its brief referred to above in para-

graph 5 conceded that Landriscina and Levin did not meet on February 12. From this he concludes that no meeting took place on February 12 or 13 and hence that neither $10,000 nor $25,000 was received by Levin.

8. The count under which Levin was convicted alleges that the larceny was committed "on or about February 13, 1959." At the trial there was testimony of a series of meetings and telephone conversations between Landriscina and Levin, both in New York and the District of Columbia. When Landriscina testified at the trial it was more than four years after these meetings and conversations. In the nature of things, his recollection may not have been exact in all particulars. However, the jury heard all the evidence, observed the witnesses, determined their credibility, drew reasonable inferences from proven facts, and found Levin guilty beyond a reasonable doubt. The court concludes that there is nothing in the petition as filed February 25, 1965 warranting the granting of any relief.

9. On March 8, 1965 counsel for Levin filed an amendment to the petition for writ of habeas corpus. It reiterates the charge in the petition that Landriscina gave untrue testimony. In addition it charges that the trial prosecutor suppressed evidence which would have proven that the thirty-five one thousand dollar bills obtained from the National Savings and Trust Company by Mr. Olson of the Bakery and Confectionery Workers' International Union of America "were never changed into the denominations required by petitioner" (Levin), and that the trial prosecutor "instead of disclosing this fact * * * made the Bank give him its records and suppressed them."

10. In discussing these serious charges some background is necessary. First, Petitioner's Exhibits 1 through 10 herein will be taken up. They are copies of bank records which the attorney for Levin claims were suppressed. None of these records were obtained from the bank by the trial prosecutor.

11. Floyd Marzo, a compliance officer of the Department of Labor, pursuant to a Labor Department investigation, obtained from the National Savings and Trust Company *copies* of the records which constitute Petitioner's Exhibits 1 through 10:

(1) a check of $35,000 which the Bakery and Confectionery Workers' International Union of America gave to Mr. Olson and which Mr. Olson cashed on February 13, 1959 at the National Savings and Trust Company, receiving therefor thirty-five $1,000 bills;

(2) a check dated February 13, 1959 in the amount of $35,000 drawn by the National Savings and Trust Company on the Riggs National Bank for cash;

(3) a teller settlement sheet of the National Savings and Trust Company dated March 4, 1960;

(4) a teller settlement sheet of said bank dated March 7, 1960;

(5) a teller settlement sheet of said bank dated March 30, 1960;

(6) a teller settlement sheet of said bank dated March 31, 1960;

(7) a deposit slip of said bank dated March 31, 1960 showing a deposit to the credit of the Union heretofore mentioned;

(8) a deposit slip of said bank dated March 7, 1960 showing a deposit to the credit of said Union;

(9) a statement of said bank of account of said Union as to transactions from March 17, 1960 through March 31, 1960; and

(10) a statement of said bank of account of said Union of transactions from February 29, 1960 through March 16, 1960.

12. The officer of the Department of Labor who obtained copies of the records described in the above paragraph was assigned to the grand jury investigating the Levin Case. The trial prosecutor was government counsel before that grand jury. Sometime in July 1961 the copies of records obtained by the officer of the Department of Labor as above stated came through said Department to the

trial prosecutor, then the government attorney before the grand jury.

13. Of these ten copies of records constituting Petitioner's Exhibits 1 through 10, eight relate to occurrences in 1960 more than a year subsequent to the date of the larceny of which Levin was convicted. These eight are his Exhibits 3 through 10. His Exhibit No. 1—a copy of the Union check to Olson—was exhibited prior to Levin's trial to his trial attorney, Mr. Stein. This was under a court order pursuant to Mr. Stein's motion for discovery. This leaves for discussion Petitioner's Exhibit 2. It is dealt with in the paragraph which follows.

14. After the National Savings and Trust Company had cashed the check of the Union made out to Olson for $35,000 on February 13, 1959, giving therefor thirty-five $1,000 bills, the bank desired to replenish its own supply of $1,000 bills. To do so, the National Savings and Trust Company on the same day— February 13, 1959—drew its check payable to the order of the Riggs National Bank (for cash) for $35,000 (Petitioner's Exhibit 2). Counsel for Levin claims that this check is an important piece of evidence. He argues that if the thirty-five $1,000 bills given to Olson had been returned to the bank for bills of smaller denomination there would have been no necessity for the National Savings and Trust Company to have replenished its supply of $1,000 bills. However, this argument is not well founded. The evidence indicates that when need for such replenishment arises prompt action is taken to meet that need and "a runner is always used" (Transcript, page 57). A bank employee testified of the replenishing here involved:

> I had to replenish these *as soon as possible* because we could have had another request the same day for large bills and we would have been short. So we replenished these the same day that we paid them out * * * (Transcript, page 56. Emphasis supplied.)

15. The trial prosecutor did not furnish Levin's trial attorney with a copy of the check given by the National Savings and Trust Company to the Riggs National Bank in the replenishing operation just related. (Petitioner's Exhibit No. 2.) However, Levin's trial counsel, aware prior to trial that the National Savings and Trust Company had cashed the $35,000 Union check made out to Olson, went to the National Savings and Trust Company and had a discussion with its officer, Mr. McCeney, relative to any records kept by the bank pertaining to transactions involving $1,000 bills. But apparently he did not identify his inquiries with the Levin Case. He also visited intermittently the court room at the trial of Cross who was indicted with but tried before Levin. He there heard testimony about the changing of the $1,000 bills into bills of smaller denomination (Transcript, pages 187, 188, 189, 190), but for reasons stated by him at the hearing he did not return to the bank to make further inquiry.

16. Another document which Levin's present counsel claims was suppressed is Government's Exhibit 4 herein. The obtaining of this document by the Government came about in this way: The trial prosecutor, then the attorney for the Government before the grand jury, having heard that the thirty-five $1,000 bills given to Olson were changed into smaller bills, asked the special agents of the grand jury investigating Levin to visit the officer of the bank who allegedly changed the thirty-five $1,000 bills into smaller denominations (Transcript, page 198). The visit was made in 1962 by the agents and they obtained the statement from Mr. McCeney which is Government's Exhibit No. 4 (Transcript, page 199). It reads:

> Statement by B. B. McCeney, Assistant Treasurer
>
> Re: Bakery and Confectionery Workers Union of America General Account.
>
> I hereby recall Mr. Olson coming in with a $35,000 check, dated February 13, 1959 to be cashed but I do not recall a telephone call from Mr. Olson to arrange the cashing of this check. Mr. Olson came in and I took him to Mr. Hooper, who, at that time,

was running one of the savings windows and handling the large cash, to cash this check which he did in thousand dollar bills. I do not recall Mr. Ashby coming in to change the thousand dollar bills to smaller ones. If he did I would have taken him back to Mr. Hooper because he was handling the large bills. Mr. Hooper says he does not recall cashing this money into smaller bills that day. Our auditors checked the records for teller sheets of Mr. Hooper for February 13, 1959 and could not locate them as it is our policy to keep our sheets not later than two years. It is my understanding from the auditors that we do have the 1960 teller sheets in our files.

NATIONAL SAVINGS AND
TRUST COMPANY
/s/ B. B. McCeney
Assistant Treasurer

Neither Mr. McCeney nor Mr. Hooper was called as a witness at the Levin trial. However, Mr. Hooper was a witness before the grand jury (Government's Exhibit 3). At the hearing herein both Mr. McCeney and Mr. Hooper were called as witnesses by the petitioner. But the bank transactions about which inquiry was made of them having occurred more than six years previously, their recollections were in the main vague and speculative.

17. A further claim of Levin's present counsel is that the trial prosecutor required the production of certain teller settlement sheets of the National Savings and Trust Company for February 1959, including the teller settlement sheet of Mr. Hooper for February 13, 1959; that after their production they were not returned; and that Mr. Hooper's sheet for February 13, 1959 disclosed that the thirty-five $1,000 bills delivered to Olson "were never returned that day or in the near future" (Amendment of March 8, 1965 to the petition, page 4). The court finds that no teller settlement sheets for February 1959 were turned over to the trial prosecutor or to the grand jury or to the compliance officers of the Depart-

ment of Labor, but were destroyed by the bank in accordance with its policy to destroy such records after a specified period (Transcript, pages 164, 165, 214, 215; Government's Exhibit 4). The court further finds that there is no evidence that Mr. Hooper's teller settlement sheet for February 13, 1959 made the disclosure claimed by Levin's counsel.

18. The indictment charging Levin with larceny was returned on November 1, 1962 and thereafter on January 11, 1963 Mr. Stein, Levin's attorney at that time, filed a motion for discovery. Although purporting to be filed pursuant to Rule 16 of the Federal Rules of Criminal Procedure, the requested discovery exceeded the permissible scope of that Rule. The motion in general terms sought all checks, records and correspondence obtained from Levin and others by seizure or process, *or otherwise*, relevant to any matter alleged in the indictment. No particular documents were designated. The Government opposed the motion on several grounds, contending that Rule 16 is not available to a defendant for the purpose of going through the Government's files to obtain a dress rehearsal of the prosecution. On January 25, 1963 the motion was "granted only insofar as the showing of the check to defense counsel is concerned", this being the check which Olson cashed on February 13, 1959 at the National Savings and Trust Company, receiving therefor thirty-five $1,000 bills. Accordingly, this check was exhibited to Mr. Stein, Levin's counsel at that time.

19. The evidence at the hearing did not show that Government counsel deliberately suppressed any evidence.

Wherefore, the court concludes as a matter of law:

1. Petitioner has failed to sustain his burden of proof as to his allegation of perjured testimony by a Government witness.

2. Petitioner has failed to prove his allegation that trial counsel deliberately suppressed evidence.

3. The petition should be dismissed.